IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| TROY A. TEETER, | ) | CASE NO. 1:11 CV 2376 |
| | ) | |
| Plaintiff, | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | WILLIAM H. BAUGHMAN, JR. |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | **REPORT & RECOMMENDATION** |
| | ) | |
| Defendant. | ) | |

## Introduction

Before me by referral[1] is an action under 42 U.S.C. § 405(g) by Troy A. Teeter seeking judicial review of the final decision of the Commissioner of Social Security denying his applications for disability insurance benefits (DIB) and supplemental security income (SSI).[2] The Commissioner has filed an answer[3] and the transcript of the administrative proceedings.[4] Pursuant to my order,[5] the parties have each briefed their positions[6] and also

---

[1] The matter was referred to me by United States District Judge Christopher A. Boyko under Local Rule 72.2 in a non-document order entered on November 3, 2011.

[2] ECF # 1.

[3] ECF # 12.

[4] ECF # 13.

[5] ECF # 5.

[6] ECF # 18 (Teeter's brief); # 23 (Commissioner's brief).

filed supporting charts[7] and a fact sheet.[8] The parties have participated in a telephonic oral argument.[9]

For the reasons stated below, I will recommend that the decision of the Commissioner be reversed and the matter remanded for further proceedings.

## Facts

**A.    The relevant evidence and the decision of the ALJ**

The Administrative Law Judge (ALJ) found that Teeter was 44 years old at the time of the hearing and thus a younger individual under the regulations.[10] The transcript shows that Teeter completed the 11th grade and previously worked as a carpenter, driver, drywall finisher, laborer, and mechanic.[11] Teeter lives by himself.[12]

Teeter was involved in a motor vehicle accident on June 25, 2007, when a car that failed to stop at a traffic light hit his motorcycle broadside.[13] As a result of the accident, Teeter fractured his left foot, which appeared to heal normally over the next few months.[14]

---

[7] ECF # 23, Attachment (Commissioner's charts).

[8] ECF # 14 (Teeter's fact sheet).

[9] ECF # 27.

[10] ECF # 11 (Transcript ("Tr.")) at 20.

[11] *Id*. at 129, 133.

[12] *Id.* at 20.

[13] *Id*. at 16.

[14] *Id*. at 16-17.

But, by September, Teeter still complained of significant swelling, tenderness, and pain.[15] After an MRI, Teeter received prescriptions for a period of physical therapy and later an ankle-foot orthotic (AFO) brace, which helped with stability but did not eliminate Teeter's complaints of pain.[16]

By 2009, Teeter still complainied of severe, constant pain.[17] Tests showed that reflexes for Teeter's left ankle were less than on the right ankle and that his left foot was cold with atrophy in the calf.[18] But, all other tests on the left leg were normal, including straight leg raise, hip strength, and hamstrings.[19] He was diagnosed with reflex sympathetic dystrophy and prescribed Lyrica and Percocet.[20]

Teeter testified at the 2010 hearing that he suffered constant pain since the accident, which pain prevented him from being on his feet or sitting since he only experiences relief by elevating his foot.[21]

From this evidence, the ALJ determined at step two that Teeter had a severe impairment consisting of a heel fracture resulting in possible chronic regional pain

---

[15] *Id*. at 17.

[16] *Id.*

[17] *Id*.

[18] *Id*.

[19] *Id*.

[20] *Id*. at 17-18.

[21] *Id*. at 18.

syndrome.[22] But, at step three, the ALJ concluded that this impairment did not meet or equal a listed impairment.[23]

> The ALJ found that Teeter had the following residual functional capacity (RFC):
>
> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except limit stand/walk to 4 hours in an 8 hour day; limited to jobs that can be performed either seated or standing; no climbing of ladders, ropes, or scaffolds; no more than occasional stairs, ramps, balancing, stooping, kneeling, crouching, or crawling; no limits of the use of hands or arms except requiring the use of a cane when walking; avoid exposure to hazardous machinery; and no more than occasional changes in the workplace.[24]

In support of that RFC, the ALJ specifically cited that Teeter's medical record showed that "reports to the doctors contradict [Teeter's] overall position that the pain has been unrelenting."[25] The ALJ further noted that while it may well be that Teeter has some form of chronic pain, the pain has been less severe with treatment and that Teeter has been "overstating his level of pain."[26] As to the opinion evidence, the ALJ gave greatest weight to the opinion of Dr. Terisita Cruz, a state agency reviewing source, whose opinion formed the basis for the RFC.[27]

---

[22] *Id*. at 16.

[23] *Id*. at 18.

[24] *Id*.

[25] *Id.* at 19.

[26] *Id.*

[27] *Id*. at 19-20.

After determining that with this RFC Teeter could not perform any of his past relevant work because the exertional level of that prior work was medium to heavy, while Teeter's current exertional level would be less than light, the ALJ found first that transferability of skills was "not material" because, under the Medical-Vocational Rules,[28] Teeter would be found not disabled whether or not he had transferrable job skills.[29] In particular, the ALJ noted that while Teeter would be not disabled if he had the capacity to perform the full range of work at the light level, the fact that his specific RFC is more limited means that a question exists as to whether Teeter's ability to perform "all or substantially all of the requirements of this level of work has been impeded by [the] additional limitations [of the RFC]."[30] To that end, the ALJ sought the assistance of a vocational expert (VE), who thereupon testified that, given all the factors of Teeter's RFC, he would be able to work as a customer service representative, shipping and receiving clerk, and inspector – all positions where jobs were available in significant numbers both nationally and in Ohio.[31]

Consequently, the ALJ determined that Teeter was not disabled.[32]

---

[28] Commonly referred to as the Grid.

[29] Tr. at 21.

[30] *Id.*

[31] *Id.*

[32] *Id.* at 22.

**B.     Issue on judicial review – Does substantial evidence support the ALJ's decision when the ALJ found at step five that transferability of skills was not material and where the VE never provided testimony as to transferability of skills required to support a conclusion of non-disability based on the presence of semi-skilled work?**

This case presents a single narrow issue. Teeter does not challenge the ALJ's RFC finding. He argues that the VE's testimony in response to the hypotheticals posed by the ALJ does not support the step five finding that a significant number of jobs exists that Teeter could perform.

Teeter notes first that the ALJ correctly realized that, given the non-exertional limitations of the RFC, the testimony of a VE was needed to determine at step five whether jobs existed in substantial numbers that Teeter could perform. Teeter maintains, however, that the ALJ then erred in two ways: (1) by claiming that transferability of skills was "not material," and (2) by not receiving any testimony from the VE as to transferrable skills required to do semi-skilled work – the nature of all three jobs identified by the VE as suitable for Teeter under the terms of the RFC.[33]

The Commissioner counters by contending that Teeter erroneously claims that a transferability of skills analysis was needed.[34] Essentially, the Commissioner maintains that Teeter is in error in contending that Rule 202.18 – the grid used by the ALJ to find that transferability of skills was not material – applies only to unskilled work.[35] Rather, the

---

[33] ECF # 18.

[34] ECF # 23.

[35] *Id*. at 5.

Commissioner asserts, this grid pertains to both semi-skilled and skilled work experience, and applying that rule in this case was "not inconsistent" with the rule.[36]

## Analysis

### A. Standard of review – substantial evidence

The Sixth Circuit in *Buxton v. Halter* reemphasized the standard of review applicable to decisions of the ALJs in disability cases:

> Congress has provided for federal court review of Social Security administrative decisions. 42 U.S.C. § 405(g). However, the scope of review is limited under 42 U.S.C. § 405(g): "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." In other words, on review of the Commissioner's decision that claimant is not totally disabled within the meaning of the Social Security Act, the only issue reviewable by this court is whether the decision is supported by substantial evidence. Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "
>
> The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.[37]

Viewed in the context of a jury trial, all that is necessary to affirm is that reasonable minds could reach different conclusions on the evidence. If such is the case, the Commissioner

---

[36] *Id.*

[37] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted).

survives "a directed verdict" and wins.[38] The court may not disturb the Commissioner's findings, even if the preponderance of the evidence favors the claimant.[39]

I will review the findings of the ALJ at issue here consistent with that deferential standard.

**B.     Application of standard – the ALJ's decision here is not supported by substantial evidence.**

The rather narrow issue presented here is whether a finding of skill transferability was required in this case. That matter was extensively discussed by Judge Dowd sitting by designation in the Sixth Circuit decision of *Kyle v. Commissioner*.[40] While *Kyle* involved a situation where the transferability of skills finding was made but then challenged as not supported by substantial evidence, *Kyle*'s detailed analysis of transferability highlights the fact that such a finding is required in cases where a claimant who previously performed semi-skilled or skilled work is determined not disabled by reason of an ability to perform semi-skilled or skilled work that is not the same as his past work.[41]

In particular, *Kyle* states that in dealing at step five with a claimant with limited or less education and skilled or semi-skilled previous work experience, the grids in conjunction with

---

[38] *LeMaster v. Sec'y of Health & Human Servs.*, 802 F.2d 839, 840 (6th Cir. 1986); *Tucker v. Comm'r of Soc. Sec.*, No. 3:06cv403, 2008 WL 399573, at *6 (S.D. Ohio Feb. 12, 2008).

[39] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

[40] *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847 (6th Cir. 2010).

[41] *Id*. at 855.

a claimant's RFC "are used to determine whether the claimant can successfully adjust to other work."[42] To make that determination, in turn, means that:

> The ALJ *must* then assess whether the claimant has transferable skills pursuant to 20 C.F.R. § 404.1568(d)(1)-(3) and SSR 82-41. The claimant is considered to have transferable skills when skilled or semi-skilled work activities the claimant did in the past can be used to meet the requirements of skilled or semi-skilled work activities of other jobs or other kinds of work.[43]

In this case, as noted, no transferability of skills analysis was conducted with regard to Teeter, despite the fact that all three of the jobs identified by the VE are semi-skilled positions.[44] Moreover, not only did the VE not testify as to any transferable skills, the ALJ, as noted, expressly found that such an analysis was not necessary and so asked for no testimony and made no findings on this issue. In fact, as *Kyle* states, before Teeter could be found not disabled on the basis of a capacity to perform specified semi-skilled jobs, he needed to first be found to possess transferable skills such as would permit him to perform the identified work. Thus, for the foregoing reasons, I recommend the matter be remanded so that such an analysis can be conducted.

In addition, while the ALJ specifically requested the VE to identify the extent to which the limitations of the RFC eroded the unskilled light occupation base,[45] the actual

---

[42] *Id.*

[43] *Id*. at 855-56 (emphasis added).

[44] *See*, ECF # 18 at 8.

[45] ECF # 13 at 21.

testimony of the VE provided no such analysis. Such testimony, and analysis based thereon, may be appropriate on remand.

## Conclusion

For the foregoing reasons, I recommend that the decision of the Commissioner be reversed and the matter remanded for further proceedings consistent with this report and recommendation.

Dated: December 12, 2012                    s/ William H. Baughman, Jr.
                                             United States Magistrate Judge

## Objections

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the District Court's order.[46]

---

[46] *See*, *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also*, *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).